UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW IAN FARMER<br>EDDIE DOUGLAS AUSTIN, JR.<br>CAROLYN PRICE AUSTIN<br>JOHN DAVID BROTHERTON<br>SCOTT RUSSELL SIECK<br>CHARLES EARL GROB | CRIMINAL NO. 4:16-CR-408 |

## NOTICE OF EXPERT TESTIMONY

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the United States hereby provides notice that it intends to call the following witnesses during its case-in-chief at trial: Fernando Flores-Avila, Ph.D., and Deborah Oremland. Although the United States believes both of these witnesses will be testifying as fact witnesses, out of an abundance of caution, it is providing the defendants with a summary of their anticipated testimony pursuant to Rule 16(a)(1)(G) in the event that any of their testimony is deemed to be expert opinion testimony.

The following is a written summary of the testimony of each witness:

### I.     Fernando Flores-Avila, Ph.D.

The United States believes that the anticipated testimony of Dr. Fernando Flores-Avila is that of a fact witness, rather than an expert, even though the testimony of Dr. Flores-Avila may include his opinion of a presentation made to him by representatives of Chimera Energy Corp. ("Chimera") regarding its purported non-hydraulic extraction technology. The United States does not believe such opinions qualify as expert opinions, within the meaning of Federal Rule of Evidence 702, for the following reasons:

In the months leading up to the October 1, 2012 meeting, the defendants were executing a pump and dump scheme involving the stock of Chimera. The defendants caused Chimera to issue false press releases claiming that Chimera had licensed a new technology called "non-hydraulic extraction" ("NHE"), and that Chimera had a business relationship with Petroleos Mexicanos ("PEMEX"), the national oil company of Mexico.

At the time of the meeting on October 1, 2012, Dr. Flores-Avila was the Technology Coordinator for exploration and production in the Northern Region for PEMEX. The defendants and their associates requested a meeting with Dr. Flores-Avila to present Chimera's purported NHE technology and request the authorization of PEMEX to test the NHE technology on one of PEMEX's wells.

During this meeting, Chimera's representatives made a presentation to Dr. Flores-Avila and other PEMEX employees purporting to explain their NHE technology. After hearing the presentation, Dr. Flores-Avila's reaction was that the presentation was "science fiction" and "very difficult to be used in a well." Furthermore, during the meeting, PEMEX informed Chimera's representative that their request to test the NHE technology on PEMEX wells was rejected, due to the fact that their technology had not been tested and it was a theoretical concept that represented a high risk to PEMEX. Also, PEMEX informed Chimera's representatives that these types of requests must be addressed directly to the CEO of PEMEX.

Despite PEMEX's rejection of their request, Chimera subsequently issued a press release that claimed, "the first activities in Poza Rica, Mexico between [Chimera and PEMEX] have been completed with very good results." Accordingly, Dr. Flores-Avila's thoughts and opinions about Chimera's purported NHE technology are not being presented as expert testimony. Rather, his testimony is relevant as a question of fact because the defendants' false claims about the results of

the meeting put Dr. Flores-Avila's thoughts and opinions about Chimera's purported NHE technology in issue as a question of fact.

Dr. Flores-Avila's anticipated testimony is summarized by the June 18, 2015 deposition of Dr. Flores-Avila in *S.E.C. v. Farmer, et al.*, a transcript of which has been provided to the defendants in discovery, and is incorporated by reference herein, including but not limited to:

    A.    Dr. Flores-Avila's educational and professional background, including:

        1.    Degree, petroleum engineering, National University Autonomous of Mexico;
        2.    Masters degree, petroleum engineering, National University Autonomous of Mexico;
        3.    Ph.D., petroleum engineering, Louisiana State University, Baton Rouge, Louisiana; and
        4.    More than 18 years of employment at Petroleos Mexicanos ("PEMEX"), including employment as the technology coordinator for exploration and production in the Northern Region.

    B.    Dr. Flores-Avila's impressions related to Chimera's presentation of its purported non-hydraulic fracking technology. This will include testimony that, during an October 1, 2012 meeting, representatives of Chimera Energy Corp. ("Chimera"), presented their purported non-hydraulic fracking technology to Dr. Flores-Avila, and that Chimera's presentation was like science fiction and very difficult to be used in a well.

    C.    Furthermore, among the bases and reasons for this testimony are, Dr. Flores-Avila's education, training, and experience; and the fact that when Dr. Flores-Avila asked Chimera's representatives technical questions about their purported technology, Chimera's representatives were unable to give any technical response. In addition, Chimera's representatives were unable to provide any evidence that their technology would succeed where other similar attempts had failed.

**II.     Deborah Oremland**

Ms. Oremland is Assistant General Counsel of the Criminal Prosecution Assistance Group of the Financial Industry Regulatory Authority ("FINRA"), and it is anticipated that she will testify as to the following matters:

   A.   Ms. Oremland's educational and professional background, including:

   1.   Assistant General Counsel, Criminal Prosecution Assistance Group, FINRA, 2006-Present;
   2.   Investigator, Enforcement Department, FINRA, 2005-2006;
   3.   Senior Analyst, Market Regulation, FINRA, 2001-2005;
   4.   Juris Doctor, *cum laude*, American University, Washington College of Law, 2000
   5.   University of Michigan, B.A. Psychology, 1996

   B.   The role of the SEC and FINRA in regulating the trading of stocks of publicly-traded companies.

   C.   The definition of terms used in the securities industry, including: over-the-counter ("OTC") markets, OTC Bulletin Board, reverse merger, shell company, restricted shares, free-trading shares, unrestricted shares, float, transfer agent, bluesheets, control person, affiliate, nominee, microcap stock, wash sale, matched trade, pump and dump. In addition, Ms. Oremland may define other similar terms, including terms that arise during the course of trial and on cross-examination.

   D.   The disclosure requirements of publicly-traded companies registered with the SEC.

   E.   Various ways in which stock price and volume can be manipulated, including by wash sales and matched trades.

   F.   The SEC is the federal agency responsible for the civil enforcement of the federal securities laws, including the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"), as well as the rules that it promulgates pursuant to its

statutory authority. Among its many responsibilities, it enforces the laws concerning insider trading, manipulative trading and other fraud in the securities markets.

G.  FINRA is the self-regulatory organization for the securities industry, operating under the SEC's authority. FINRA regulates the activities of its members, which include member brokerage firms and registered employees of those firms, and promulgates rules accordingly. Among other things, FINRA regulates members' conduct and provides discipline for rule violations. FINRA issues professional licenses and conducts related examinations. In addition, FINRA conducts surveillance across different securities markets and product platforms, including equities (stock) markets. FINRA conducts such surveillance with respect to not only its members, but also non-members, pursuant to agreements that it has with various exchanges, entities and markets, such as OTC Markets, NASDAQ and the New York Stock Exchange (the "NYSE"). FINRA often makes referrals to the SEC.

H.  OTC Markets is an inter-dealer quotation and trading system. Although OTC Markets has fewer listing requirements than the NYSE and the NASDAQ, the SEC still regulates OTC Markets. OTC Markets maintains different tiers for companies with large, midsize and small capitalizations, and those tiers carry different requirements.

I.  The OTC Bulletin Board is an inter-dealer quotation and trading system where market-makers can quote and trade stocks.

J.  A "reverse merger" is a process by which one private company merges into a public shell company and continues to trade as that public company.

K.  A "shell company" is defined by regulation, specifically Rule 405 of the Securities Act. A "shell company" is, among other things, a company that has nominal operations and minimal assets.

L. "Restricted shares" are shares or securities of a publicly traded company (known as an "issuer") that are not registered with the SEC and cannot be sold to the public. Rule 144 of the Securities Act, however, permits the sale of restricted securities in certain circumstances.

M. "Unrestricted" shares are shares that are not restricted and can be sold, or traded, without restriction.

N. The "float" is the total number of shares issued by a company that is available for trading without restriction.

O. A "transfer agent" is a company assigned by the issuer to maintain records of investors, account balances and transactions, including, among other things, transactions pursuant to which restricted shares are converted into free-trading ones.

P. "Bluesheet" data is information that FINRA members provide to FINRA and the SEC concerning securities trading. Specifically, the data includes customer-specific information for a particular stock at a particular time, including customer name, address, account number, identity of the shares bought or sold, the number of shares bought or sold, the price and the amount of money paid or received, among other things. Firms are required to provide this information to FINRA or the SEC upon request.

Q. "Affiliate," as defined by the SEC rules is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the issuer of a security.

R. The term "nominee" in the securities fraud context refers to a person or entity into whose name securities or funds are transferred or held in order to facilitate transactions while concealing the actual owner.

S. "Microcap stock" refers to the stock of companies with low or "micro" capitalizations (the total value of the company's stock).

T.  A "wash sale" or "wash trade" refers to a purchase and sale of a security where there is no material change in ownership of the security, e.g., the buyer and seller are the same person and entity.

U.  A "matched trade" is similar to a wash trade. In a matched trade, the buyer and seller are not the same person or entity, but the trade is prearranged, meaning that there is some coordination or connection between the buyer and the seller ahead of the actual order placement and execution of the trades.

V.  A "pump and dump" is a description of a particular type of securities fraud in which a group of individuals who control certain free-trading shares of an issuer act in concert to increase the share price and volume of the security through various means, which is referred to as the "pump," and then the group of individuals sell, or "dump," their free-trading shares, in an effort to achieve substantial financial gain. Pump and dump schemes often use methods including, but not limited to, wash trades, matched trades and false or misleading press releases.

W.  Ms. Oremland is also expected to summarize the trading activity, price, and volume of the publicly traded stocks of Onyx Service & Solutions, Inc. (ticker: ONYX), Nova Mining Corp. (ticker: NVMN), DoMark International, Inc. (ticker: DOMK), Chimera Energy Corp. (ticker: CHMR), Massive Dynamics, Inc. (ticker: MSSD), Solar America Corp. (ticker: SOLX), BlueFire Equipment Corporation (ticker: BLFR), Puget Technologies (ticker: PUGE), GankIt.com (ticker: GANK), Horizon Energy Corporation (ticker: HORI), NHale, Inc. (ticker: NHLE), and Valmie Resources Inc. (ticker: VMRI). Ms. Oremland may also summarize the brokerage, bluesheet, clearing firm and/or transfer agent records that have been produced in discovery to identify relevant trades and trading activity. In connection with this testimony, Ms. Oremland has prepared summary charts pursuant to Federal Rule of Evidence 1006.

The United States has provided the defendants with a copy of Ms. Oremland's *curriculum vitae*. The United States has also provided the defendants with draft copies of the summary charts described in paragraph II.W. that the United States currently anticipates introducing during Ms. Oremland's testimony.

This notice may be updated as needed.

        Respectfully submitted,

        RYAN K. PATRICK
        United States Attorney

        /s/ Justin R. Martin
        Justin R. Martin
        Michael Chu
        Assistant United States Attorney
        1000 Louisiana Street, Suite 2300
        Houston, Texas 77002
        (713) 567-9000

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing, which was filed electronically, has been delivered automatically to the attorneys for the defendants by the ECF system.

                                      /s/ Justin R. Martin
                                      Justin R. Martin
                                      Assistant United States Attorney