UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA . Criminal Action
VERSUS . No. H-16-CR-408
ANDREW IAN FARMER, et. al., . Houston, Texas
. December 10, 2018
. 10:30 a.m.
Defendant.
. . . . . . . . . . . . . . . . . . .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE VANESSA D. GILMORE
PRETRIAL CONFERENCE

APPEARANCES:

FOR THE UNITED STATES OF AMERICA:

Mr. Michael Chu
Mr. Justin R. Martin
Assistant United States Attorneys
UNITED STATES ATTORNEY'S OFFICE
1000 Louisiana
Suite 2300
Houston, Texas 77002
713.567.9000

FOR THE DEFENDANT ANDREW IAN FARMER:

Mr. Chris Flood
FLOOD & FLOOD
914 Preston
Suite 800
Houston, Texas 77002-1832
713.223.8877
Fax: 713.223.8879
gail@floodandflood.com

PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION

APPEARANCES

(continued)

FOR THE DEFENDANT EDDIE DOUGLAS AUSTIN, JR.:

Mr. Robert Eric Reed
REED LAW FIRM
402 Main
Suite 3, South
Houston, Texas 77002
713.600.1800
FAX: 713.600.1840
ereed@reedlawpllc.com

FOR THE DEFENDANT CAROLYN PRICE AUSTIN:

Mr. Dan Lamar Cogdell
Mr. John Dennis Hester
COGDELL LAW FIRM, PLLC
402 Main Street
4th Floor
Houston, Texas 77002
713.426.2244
FAX: 713.426.2255
dan@cogdell-law.com
dennis@cogdell-law.com

FOR THE DEFENDANT JOHN DAVID BROTHERTON:

Ms. Amber Spurlock
TAD NELSON & ASSOCIATES
820 East Main Street
League City, Texas 77573
281.280.0100
FAX: 281.316.9208
shelly@thenelsonfirm.com

FOR THE DEFENDANT SCOTT RUSSELL SIECK:

Mr. Charley A. Davidson
HANSZEN & LAPORTE
14201 Memorial Drive
Houston, Texas 77079
713.522.9444
FAX: 713.524.2580
cdavidson@hanszenlaporte.com

COURT REPORTER:

GAYLE L. DYE, CSR, RDR, CRR
515 Rusk, Room 8004
Houston, Texas 77002
713.250.5582

PROCEEDINGS

December 10, 2018

THE COURT: United States of the America versus Andrew Ian Farmer.

10:30:04 For the United States?

MR. CHU: Good morning, your Honor. Michael Chu and Justin Martin. I'm sorry to say that Mr. Martin has stepped out to use the men's room.

THE COURT: Just his luck. That's how it goes, you

10:30:13 know, Murphy's Law.

For -- wait a second. For Andrew Farmer, please?

MR. FLOOD: Mr. Flood, your Honor. Good morning.

THE COURT: Chris Flood.

For Thomas Massey, then, please? Thomas Massey?

10:30:32 MR. CHU: Your Honor, Mr. Massey has pled.

THE COURT: Mr. Massey is gone. Never mind. I forgot.

MR. CHU: Mr. Grob has also pled.

THE COURT: Right, that's correct.

10:30:38 Eddie Austin, please?

MR. REED: Good morning, your Honor. Eric Reed.

THE COURT: There you are, Mr. Reed.

MR. REED: I just saw Mr. Martin, and he'll be here shortly.

10:30:49 THE COURT: Don't try to help him.

MR. DAVIDSON: He said something about he didn't really think he needed to be here.

THE COURT: That's right. Let him go.

For Carolyn Austin, please?

10:30:59 MR. COGDELL: Good morning, your Honor. Dan Cogdell with Dennis Hester.

THE COURT: Mr. Cogdell and --

MR. COGDELL: Mr. Hester, Dennis Hester.

THE COURT: Oh, there you are.

10:31:05 MR. HESTER: Good morning, your Honor.

THE COURT: Okay, great.

And for John Brotherton?

MS. SPURLOCK: Good morning, your Honor. Amber Spurlock with Tad Nelson's office.

10:31:15 THE COURT: Oh.

Why are you coming up here, Johnny come lately?

Ms. Spurlock.

MS. SPURLOCK: Yes, ma'am.

THE COURT: Are you on this case?

10:31:26 MS. SPURLOCK: Yes, ma'am, with Mr. Nelson.

THE COURT: Okay. Did you file a notice of appearance? Your name is not on the docket sheet.

MS. SPURLOCK: I thought they filed one this morning, but it's possible that it's not.

10:31:36 THE COURT: Say your first name again, please.

MS. SPURLOCK: Amber.

THE COURT: Amber?

MS. SPURLOCK: Yes, ma'am.

THE COURT: Stop ma'aming me. Did they not tell you about me? If you ma'am me one more time -- stop. Hold on. Let me get my sign.

MR. COGDELL: She's quite serious.

THE COURT: Let me get my sign.

MS. SPURLOCK: That's my military background.

THE COURT: Stop. Okay. Well, what am I?

MS. SPURLOCK: Yes, your Honor.

THE COURT: What am I? A judge.

MS. SPURLOCK: Yes, Judge.

THE COURT: Or "your Honor." Your military background. Did you go to law school, too?

MS. SPURLOCK: I did. Yes, your Honor.

THE COURT: Stop ma'aming. Oh, my God. Irritating.

Scott Sieck?

MR. DAVIDSON: Sieck.

THE COURT: Sieck.

MR. DAVIDSON: Yes, ma'am -- yes, Judge. I'm pushing my luck.

THE COURT: He did that on purpose.

MR. DAVIDSON: Charley Davidson for Mr. Sieck, Judge.

THE COURT: Charley Davidson for Mr. Sieck.

                              And Grob is gone.

Okay. All right. All right. So, you-all know I've seen Mr. Chu. You-all probably heard through the grapevine that I've seen Mr. Chu a couple of times recently because he was here on some other case -- I forgot what it was -- some other something; and then, he was in here on the pleas the other day; and so, I was picking his brain for --

MR. COGDELL: He self-disclosed, your Honor. He self-disclosed.

THE COURT: Yeah. I told him -- I was picking his brain for the timing, and he probably told you because I was trying to have a little medical procedure at the beginning of the year. And so, I had originally thought this case was, like, eight days. So, I scheduled my little surgery; and then, he's, like, "Oh, no, that's not going to work out at all."

So, then, I was just picking his brain because I was trying to make an adjustment on my dates so that I could be ready for trial; and as I understand it now, we're still thinking around a three-week trial.

Mr. Flood, does that comport with what you think?

MR. FLOOD: I would hope so, your Honor. I would hope we can get it done in three weeks.

THE COURT: Mr. Cogdell?

MR. COGDELL: Judge, I hope so. I have a matter set in early February --

10:33:40
10:33:54
10:34:12
10:34:28
10:34:45

THE COURT: Okay.

MR. COGDELL: -- in Sherman, Texas, that's preferentially set. So, I hope so.

THE COURT: And Mr. Davidson?

MR. DAVIDSON: Judge, I think that's realistic. The only issue, kind of the intangible, is the Government's filed -- and one of the motions before the Court relate to the 404(b) notices; and basically, they have doubled the number of companies that they want to present evidence on which could -- could change that timetable. But three weeks, I think, was -- was initially proposed and sounds pretty reasonable.

THE COURT: Sounds still like a reasonable time?

Well, I've -- so, the reason that I'm asking is because I'm pushing you guys back just one week. Because that way I can go ahead and get myself together and be ready for you guys and give you as much time as you need.

MR. COGDELL: Speaking of the 10th or -- we had heard the 14th.

THE COURT: What did I do, Byron? What did I do? Help me remember.

(Side-bar discussion off the record between the Court and the case manager.)

THE COURT: Right. So, now, I have you guys starting on the 14th of January.

MR. COGDELL: Well, Merry Christmas. We'll see you

then.

THE COURT: Merry Christmas. So, that gives you the whole rest of the month of January or as much as you want, three weeks. That takes us, basically, to the end of January. That's the date that I think that I thought would work. I pulled my date up. I think I was originally thinking that you guys would be out of here by, like, the 14th or 15th. So, I scheduled myself out starting the 17th. But now, I'm going to go ahead and pull my date up and get myself together.

MR. COGDELL: I hope it goes well.

THE COURT: If it doesn't, no trial. No, don't say that.

MR. DAVIDSON: Judge, don't --

MR. CHU: Judge, don't say that.

MR. COGDELL: I didn't mean it that way, Judge.

MR. DAVIDSON: Yes, he did.

THE COURT: No. All you-all better pray for me. That's all I'm saying.

So, since -- so, where are we now? I need to figure out where we are. Did the Government finish all its discovery production?

MR. MARTIN: Yes. Unless anything new comes in, discovery is complete.

THE COURT: Is done?

MR. MARTIN: Yes.

THE COURT: Okay. And everybody's gotten everything.

MR. FLOOD: We have gotten -- we have gotten a lot of discovery in the last few months. So, it's good to hear that they're done.

10:36:06 THE COURT: That they think that they're done.

MR. CHU: And your Honor, stuff may be trickling in; but the Government is not holding onto that stuff. As soon as we get it -- if we get anything else, we'll immediately push it out.

10:36:18 THE COURT: Trickling in from where? From where? From who? From where?

MR. CHU: Well, your Honor, as we talk with witnesses, if a new lead comes up -- for example, we just spoke with a witness who told us that Defendants were using a Snapchat-type 10:36:32 service. So, we just got those messages. We're not holding onto them. We're immediately going to push them out.

MR. MARTIN: Right. That's one thing that has not been turned over that we just got last week that we were going to turn over this week, and it's not voluminous.

10:36:49 MR. FLOOD: And your Honor, I don't have any objection to the late discovery stuff unless it's going to be a huge production. Do you know what I'm saying? If I get, all of a sudden, 5,000 pages --

THE COURT: Ask your clients how much Snapchatting 10:37:00 they were doing. Maybe you'll know -- you'll know before they

know.

MR. FLOOD: That's a little scary, yeah. That's right. I don't know what it is.

THE COURT: At least they're not teen-agers.

10:37:08 MR. FLOOD: I know.

THE COURT: Where you're going to have, you know, millions of Snapchat things. But ask your client what they're looking at. If they figured out that they're Snapchatting and now they found it, you-all know more than they know what it is.

10:37:22 MR. FLOOD: I haven't received it yet. But I was just saying I haven't had any discovery issues, your Honor.

THE COURT: Okay.

MR. CHU: Your Honor, conversely, we do note that the Court did issue an order for reciprocal discovery; and you know, 10:37:34 not only have we not gotten exhibits from the defense, we haven't even got any discovery from the defense.

THE COURT: Okay.

MR. FLOOD: I don't have any.

THE COURT: Do you-all have any discovery?

10:37:42 MR. FLOOD: I don't, your Honor. They've been pretty thorough in what they've given us.

THE COURT: What about you, Mr. Cogdell, you got anything?

MR. HESTER: Your Honor, we have some discovery; 10:37:51 but --

THE COURT: Who are you? I forgot.

MR. COGDELL: Dennis Hester.

MR. HESTER: Dennis Hester with Mr. Cogdell.

THE COURT: Yes, uh-huh.

10:37:55 MR. HESTER: Your Honor, we had some discovery; but the Government in their most recent round of discovery sent us the discovery that needed subpoenaed.

THE COURT: The same thing? So, you don't have anything different?

10:38:06 MR. HESTER: It looks like not.

THE COURT: I gotcha.

What about anybody else? Mr. Davidson or --

MR. DAVIDSON: Judge, Mr. Sieck, at this time, does not have any discovery that's within the parameters of Rule 16,

10:38:20 no, ma'am -- no, Judge. God.

MR. COGDELL: Just stand down, Charley. I got this.

MR. DAVIDSON: I always thought my mother and father's upbringing was really helpful, but I'm finding that not to be the case.

10:38:33 THE COURT: Well, if you have to call me ma'am, I'm going to need you to shuffle your feet and put your head down. Be real obsequious about it.

MR. DAVIDSON: I will do it all.

THE COURT: I'm going to need you to, like, shuck and

10:38:45 jive.

Mr. Reed, what you got?

MR. REED: Your Honor, I think my answer is the same as Mr. Davidson at this time.

THE COURT: And Ms. Spurlock?

10:38:54 MS. SPURLOCK: The same, Judge.

THE COURT: Okay. Good deal.

MR. CHU: Your Honor, all we would ask is that, if they do get discovery, just they produce it within, like, a week of receiving it, if something trickles in from here on out. We 10:39:01 just don't want to get hammered the night before trial. That's all.

THE COURT: All right. I'll get this -- if you got any -- did I already sign the order for reciprocal discovery?

MR. MARTIN: This was one signed that I -- I filed a 10:39:14 motion when it was just Andrew Farmer and Thomas Massey back in -- it must have been 2017, and that was granted. Then, I renewed the motion after the -- after the superseding indictment; and that is Docket Number 217. I think that's still pending.

10:39:27 THE COURT: I see it. It's right there.

All right. What else of the outstanding motions -- let's see, Byron, here.

MR. REED: One thing that would be helpful, your Honor, to help us streamline and plan and know whether we had 10:39:41 reciprocal discovery would be to know the Government's witness

list.

THE COURT: But do they have to give you their witness list now?

MR. REED: I don't know that they have to today. But the sooner, the better so that we know what -- who's coming and how to prepare and so forth.

THE COURT: Well, I'm sure before trial you-all will give them the witness list, aren't you?

MR. MARTIN: We told them in our previous filings that we would provide it before trial.

THE COURT: Give it to them before trial.

MR. CHU: Yes, your Honor.

MR. DAVIDSON: I'm sorry, I missed that.

MR. MARTIN: That we would provide it before trial.

MR. CHU: Before trial.

MR. DAVIDSON: Just before trial?

MR. REED: Can we put a date on that so that --

MR. MARTIN: We're still --

THE COURT: They don't have to give it to you at all before trial. So, at least, give it to them a couple of days before trial, please.

MR. CHU: Yes, your Honor.

MR. MARTIN: Yes, your Honor.

THE COURT: Please, please, please. Otherwise, we may end up with a delay.

MR. CHU: No, your Honor.

MR. MARTIN: We don't want that.

THE COURT: Do you-all have -- is there any -- anything extra in the way of documents to be produced that would be potentially considered Jencks material or is -- is the discovery that you produced is everything? Is there going to be anything extra is what I'm looking for?

MR. MARTIN: We have been producing every -- not -- even though it's not considered Jencks, we've been producing the 302s of the witness interviews as they come to us as the FBI prepares them.

THE COURT: Okay.

MR. MARTIN: All prior testimony.

THE COURT: Have you done all the 302s, given them all the 302s?

MR. MARTIN: Well, that's something that I wanted to ask the Court about. Because the FBI does do 302s for some things that are completely investigative steps that don't have anything to do with, you know, witness interviews. I didn't know if you wanted to include, like, on this data a subpoena was served or on this date we staked out a residence.

THE COURT: Not that crap. Nobody wants that.

MR. MARTIN: Okay.

MR. CHU: Just to be sure, your Honor.

MR. FLOOD: I'm having a hard enough time getting

 through what I have, Judge.

THE COURT: Right.

MR. MARTIN: If the order --

THE COURT: That's extra. That seems like a pile-on. So, let's make sure that -- yeah. I'm sorry. If I -- that's my fault. And so, then, I've been unclear because I did say "all"; and nobody wants all that junk because that's just going to end up -- that mucks up the works and makes them think that there's more -- there's something there when there's nothing.

302s that are -- that would be considered Brady material. 302s that would be considered Jencks Act material. 302s that contain anything exculpatory. 302s that have to do with witnesses and their -- you know, any 404(b) information about witnesses.

So, it's my fault that I said all 302s because that's, obviously, not what the defense is looking for. They're not looking for a bunch of junk to pile up and clog up their -- clog up the works. But Jencks and Brady and inculpatory statements of other witnesses; 404(b) evidence from other witnesses; and exculpatory information, obviously, the Brady and Jencks stuff. But no, not -- not "all" meaning every single piece or scrap of paper.

MR. MARTIN: Yes. All that has been turned over already.

THE COURT: Okay.

MR. COGDELL: Judge, Ms. Austin does have an outstanding motion. I don't expect the Court --

THE COURT: Which one is that?

MR. COGDELL: It's under seal and ex parte.

10:43:02 THE COURT: Okay. So --

Byron, hold on.

I can probably find it. Hold on. Give me a second.

MR. COGDELL: Take your time. We don't need to hear 10:43:09 it today. I just didn't want it to slip through the cracks.

THE COURT: Okay. Let me make sure. Do you happen to remember what instrument number it would be?

MR. COGDELL: I don't. Mr. Hester is looking for it. Here's a copy --

10:43:19 MR. HESTER: 264.

THE COURT: Okay. Hold on. I got it right here.

MR. COGDELL: Here's an extra copy.

THE COURT: Yeah. Oh, yeah, yeah, yeah, yeah, yeah. Yeah, I remember. Okay. I'll deal with that. I'll -- you 10:43:37 don't want to talk about it today, do you?

MR. COGDELL: Well, that would require everybody getting tossed out.

THE COURT: Right, right, right.

MR. COGDELL: So, we can come back on another day. 10:43:45 You can do it at your leisure, on your own, whatever the Court

 prefers. I think it's a substantive motion. So, I don't want to go silent. But I don't want to inconvenience you this morning.

THE COURT: Hold on. Just let me make sure -- did you -- did you not -- oh, you did not provide a copy of this to the Government?

MR. COGDELL: No, ma'am.

THE COURT: Your Honor.

MR. COGDELL: Your Honor. He's rubbing off.

Damn it, Charley. Damn it.

MR. DAVIDSON: He tries and it just doesn't happen.

MR. COGDELL: I did not, Judge.

THE COURT: Okay. Let me come back to you then.

MR. COGDELL: Yes.

THE COURT: I'll come back to you.

MR. COGDELL: Thank you.

THE COURT: Let me ask about this expert witness issue that somebody raised.

Who is Mr. Brotherton's counsel?

MS. SPURLOCK: Judge, I am.

THE COURT: What's the issue with the expert witnesses? You guys are having expert witnesses?

MS. SPURLOCK: We are. I believe it's the issue that we already spoke about.

MR. MARTIN: Yes, your Honor.

THE COURT: Did you-all resolve it?

MS. SPURLOCK: I believe we're going to speak again, but it's easily resolved.

THE COURT: Right.

10:45:39 MS. SPURLOCK: They're asking for a little bit more information on what witnesses --

THE COURT: Right.

MS. SPURLOCK: Yes. I'm going to get that to them. He told me this morning, specifically, what he was looking for.

10:45:40 THE COURT: Right, right, right. So, you-all are going to take care of that and I don't need to get in your business?

MS. SPURLOCK: Yes.

MR. CHU: Your Honor, if you can just hold that motion 10:45:48 in abeyance for now. We might just --

THE COURT: Tell me you're going to get it resolved.

MR. CHU: We might be able -- it sounds like we're going to get it resolved, your Honor.

THE COURT: Okay. I'm terminating it. Let me know if it doesn't work out.

MR. CHU: Yes, your Honor.

MR. MARTIN: We will, your Honor.

MS. SPURLOCK: Thank you.

THE COURT: Byron.

10:46:12 Anything else -- any other motions that you-all

feel like I need to address with you this morning?

MR. REED: Your Honor, there's --

THE COURT: Which one is it?

MR. REED: There is a response -- the Government filed a notice -- two notices relating to 404(b) material.

10:46:21

THE COURT: Right.

MR. REED: On behalf of --

THE COURT: And I see your response, Number 276. Is that what you're going to refer me to?

10:46:30

MR. REED: Yes, your Honor.

THE COURT: Because I was just going to ask you about that. That was the one?

MR. REED: Yes.

THE COURT: So, what's your issue?

10:46:37

MR. REED: The issue that we have with it is that the Government is seeking -- two issues. One is related to a company called Sunrise Solar that is not charged in any of the indictments, including the instant third superseding indictment.

THE COURT: Uh-huh, uh-huh.

10:46:55

MR. REED: And they're seeking to introduce a civil settlement agreement where there was no admission of fault which, as best I can tell, is barred under 408; and there is no -- by a long shot, there's no exception to 408 for the reasons they intend to -- the Government intends to introduce it.

10:47:14

It was a civil settlement entered in 2013

relating to conduct from 2008, 2009.

THE COURT: I know that you guys had a 404(b). Is it on the -- have you-all exchanged -- did you guys get them an exhibit list already or no?

10:47:34 MR. MARTIN: Not yet.

THE COURT: My question is going to be irrelevant because my question was going to be is it -- was it an exhibit.

MR. REED: It was not. They gave us material in discovery about it, and I believe they gave us recently a

10:47:45 production of exhibits of about nine hundred or a thousand exhibits that I believe included materials on this company.

MR. MARTIN: Yes. We haven't given them the list, but we've given them actual exhibits.

THE COURT: And is there something from this

10:48:00 settlement --

MR. MARTIN: Yes, your Honor.

THE COURT: -- on the potential exhibit list?

MR. MARTIN: Yes, your Honor.

THE COURT: You said you have given them the actual

10:48:06 exhibits?

MR. MARTIN: Yes.

MR. REED: They've given us some exhibits.

MR. MARTIN: Not all of them but some. We're still in the process of getting the other exhibits ready to go, and we

10:48:13 are getting our exhibit list ready to turn over, as well.

That's going to be turned over shortly.

THE COURT: Okay. And so, with respect to -- I guess, is this like a big group of documents -- several documents, one document? Tell me what I'm looking at.

10:48:25 MR. REED: What it appears to be is the agreed -- settlement agreement judgment entered by a federal judge in the Western District of Texas in January of 2013, as well as other -- some underlying documents relating to press releases relating to that company.

10:48:50 We -- a civil settlement agreement, Judge, by its very nature, in this one, anyway, is neither an admission of fault or no fault; and it was a settlement. And the -- and by its definition, there's no admission of fault; and it's going to have a strong and unfair --

10:49:13 THE COURT: Okay, okay.

MR. REED: -- insinuation of guilt.

THE COURT: So, I'll tell you what I'd like to have: I'd like to actually see those exhibits myself since I don't really know anything about what that's about.

10:49:23 And what's the relevance of those to this case, Mr. Chu?

MR. CHU: Your Honor, that order tells Mr. Austin to not participate in any more penny stock offerings; and then, he went out and continued to do it as part of this fraud. Within a

10:49:37 week, actually, what he did was he stopped becoming the CEO or

director or officer of any of the shell companies and, instead, started funneling the money through his son, Brian Barrilleaux, currently an unindicted co-conspirator. That, by the way, was mentioned in the indictment.

10:49:52 THE COURT: That was -- the civil settlement precluded him from being able to do that?

MR. CHU: Yeah. And from our standpoint, this is really about notice. You know, once he's been told, "What you're doing is illegal" and he continues to do that, that is as

10:50:03 good as evidence --

MR. REED: No.

MR. CHU: -- of intent and knowledge as we'll ever get to see.

THE COURT: Okay. Well, give me -- I'd like to have a

10:50:10 copy of whatever this settlement agreement -- what is it, a judgment or a settlement agreement?

MR. CHU: A judgment, your Honor.

MR. REED: I believe it's attached to our -- that motion.

10:50:18 THE COURT: The settlement agreement is attached to the judgment?

MR. REED: The agreed judgment. They're not charged with securities fraud, Judge; and it is a wrong statement of the law to say that a violation of a penny stock bar is a crime.

10:50:27 It's an administrative violation. The SEC could go after --

THE COURT: No. He didn't say it was a crime, he said it was --

MR. REED: Well, he did.

THE COURT: -- notice.

10:50:34 MR. REED: He said it's notice. They said it will be a crime if you do it again. That's not at all what it says.

THE COURT: Okay. Well --

MR. REED: And the jury will --

THE COURT: I'll tell you what --

10:50:41 MR. REED: -- it will be unfairly prejudicial.

THE COURT: -- is there anything more than what's attached to the motion in terms of the exhibits, Mr. Reed?

MR. REED: Well, there's --

THE COURT: No. That you want me to look at. That's 10:50:49 what I'm saying.

MR. REED: I don't believe so, Judge.

THE COURT: Okay. So, I have what I need?

MR. REED: I believe so.

THE COURT: Okay, good deal. So, never mind. I just 10:50:55 wanted to make sure that I had everything that you wanted me to consider in that regard.

MR. CHU: And your Honor, before the Court rules on this, the Government only -- hasn't had a full week to respond to this yet.

10:51:05 THE COURT: I know. I see it got filed on 12-3.

 MR. REED: And your Honor, it relates to notice provided in one of the two notices relating to about six other companies; and I don't believe --

THE COURT: I'm sorry, say it again.

10:51:19 MR. REED: So, my argument just now relating to Sunrise Solar --

THE COURT: Right.

MR. REED: -- relates to one company's particular interest because there's this no admission of fault settlement agreement --

10:51:28

THE COURT: Right.

MR. REED: -- that they want to introduce. But there are also seven other companies that the Government seeks to introduce evidence of that are not in the indictment, not in the superseding indictment, and --

10:51:37

THE COURT: Are you referencing -- did you reference them in here?

MR. REED: Yes, your Honor.

THE COURT: Okay.

10:51:43 MR. REED: I believe I'm not the only one, I think, that --

MR. DAVIDSON: Judge, in addition to Mr. Reed filing an objection to the notice, Mr. Sieck has filed one in Document Number 293.

10:51:55 THE COURT: I have it right here.

MR. DAVIDSON: Yes, ma'am. I'm sorry, Judge. And I believe Mr. Flood has on behalf of Mr. Farmer in Document 295.

MR. FLOOD: 295, Judge.

THE COURT: I got them all right here.

10:52:05 MR. DAVIDSON: They all have as a genesis the same issues, which is Mr. Reed has pointed out there are two notices. One of the notices sets out eight additional companies beyond what those -- beyond those set out in the indictment that the Government wants to go into including Sunrise Solar which 10:52:21 Mr. Reed has spoken to you about.

There are some additional issues, such as the civil judgments. They want to get in the fact that there were trading suspensions imposed on some of the companies. So, it's a variety of different issues relating to other companies.

10:52:37 THE COURT: Okay. What about this motion in limine, Mr. Reed? Mr. Austin used to have a law license?

MR. REED: Yes, your Honor. He resigned in lieu of further disciplinary --

THE COURT: What was that related to?

10:52:53 MR. REED: It was related to, I think, a variety of things related to his -- an accusation by a former client relating to the disposition of --

MR. COGDELL: Unrelated conduct to the indictment.

MR. REED: Yes.

10:53:05 THE COURT: There is any objection to this motion in

limine? Do you want to see it? It just got filed.

MR. MARTIN: We weren't planning -- we weren't planning on going into that in our chase in chief. It might -- it could potentially come up as impeachment evidence if the Defendant took the stand.

10:53:19

THE COURT: All right. Well, then, the motion in limine is granted. That just means that you have -- that you have to approach before you deal with this. We'll see what happens.

10:53:38

MR. FLOOD: Your Honor, I have a couple of motions. I don't know if your Honor wants to talk about them.

THE COURT: What you got, Mr. Flood?

MR. FLOOD: Well, one of them is that 404(b) objection, but I didn't file that until Friday, and I doubt that they probably have had a chance to file a response.

10:53:47

THE COURT: Related to which evidence?

MR. FLOOD: It's the same notices that they've provided. One -- one is they want to get in a civil complaint that was filed by the SEC --

10:54:01

THE COURT: Right.

MR. FLOOD: -- in the substance of this case, as well as a summary judgment that was granted in that case.

I mean, what some other Government agency does is not relevant to the jury's determination of the facts in this case.

10:54:14

THE COURT: Okay.

MR. FLOOD: So, I --

MR. CHU: And your Honor, I'll go back to notice again. Once the Government has told you -- once several agencies have told you what you're doing is wrong and it's considered to be like a --

MR. FLOOD: Judge, they want to get in the civil complaint and summary judgment in the Chimera case which the indictment in this case is the Chimera case. But anyway, we can take this up at a different time.

THE COURT: I haven't pulled that one, I'm sorry, Mr. Flood. That one -- I don't know why I didn't get that.

Byron.

But I'll take a look at it.

MR. REED: Our concern is that we're going to end up having data on eight companies not charged in the indictment dumped on us, and we're going to have to conduct a real time investigation.

THE COURT: Well, they don't have --

You said you don't have any more discovery that you need to produce. Do you?

MR. MARTIN: Correct.

MR. CHU: That discovery on those companies has already been pushed out now for quite sometime.

MR. DAVIDSON: Where that leaves us, Judge, is the

jury is still going to hear about ten companies that are in the indictment; and then, the Government wants to add eight additional companies as extraneouses. So, you're, basically --

THE COURT: I'll see what it is that they want to produce.

10:55:17

MR. FLOOD: It's certainly going to put the three-week trial date in jeopardy.

THE COURT: I'll be happy -- I mean, after January the 8th or 10th, I can give you-all all the time you want. You can have all the time you need. I just needed to make sure that I was available.

10:55:30

MR. FLOOD: The other motion that I filed, your Honor, is Number 292. It really wasn't a motion. It's just -- pursuant to Local Rule 55.2, I had to object to authenticity; and the authenticity simply stated is this --

10:55:48

THE COURT: You know what I want?

Byron, my docket sheet. I don't have through -- oh, I only have through 290. Okay.

Okay, go ahead.

MR. FLOOD: That can be simply stated is this: We received a thousand e-mails or more. And then, the exhibits also contained business records affidavits, for lack of a better word, from, like, Yahoo and Google saying these are true and correct e-mails.

10:56:04

THE COURT: Right.

10:56:24

MR. FLOOD: I don't have any problem with that. Those are authenticated. My problem is the attachments to those e-mails can be documents from Europe or documents from somewhere else, documents from a bank. I don't know how the Google employee can say that that attachment, that bank record, is made by someone with knowledge of the contents therein. It's made in the ordinary course of business. You know what I'm saying. It's the attachments.

10:56:35

THE COURT: But they don't have to. I mean, if this is what was attached to the e-mail, they get to put the whole e-mail in. What are you talking about? I don't split it up to try to figure out each page. It's not an authenticity per page.

10:56:49

If that's what the e-mail was and that was what was attached to the e-mail, then that's what it is. Otherwise, you'll be three months in trial. We're not doing that. What are you talking about?

10:57:02

MR. FLOOD: No. I understand for authenticity purposes it's a true and correct document from Google or true and correct document from Yahoo; but as far as admissibility, your Honor, that Yahoo employee cannot establish the regularly conducted business record predicate for admission of the attachment, your Honor. That's all I'm saying.

10:57:16

THE COURT: That's not a real objection, Mr. Flood. Come on now. Because if it's -- if the authenticity -- you're conflating authenticity with admissibility of business records.

10:57:33

MR. FLOOD: I've addressed both of them in that motion, your Honor. I only objected to the authenticity in that the attachment -- and they're not all business bank records, right? I'm not going to frivolously object to an authentic document.

10:57:48

THE COURT: Because you're going to make me look at every single one of these documents and figure out whether or not those exhibits were actually attached to the e-mail. If they were attached to the e-mail and they authenticated the e-mail, then I'm done.

10:57:56

Are you going to say that somebody put these with them after they were -- after the e-mails were made, that they were added after the fact? Is that the argument?

MR. FLOOD: No. I have to object under the local rules, your Honor, when they give us the notice. I have to tell them, look, I need to -- I need you to authenticate the attachments. You've authenticated the e-mails. I need you to authenticate the attachments.

10:58:11

THE COURT: Were the attachments to the e-mails?

MR. FLOOD: Yes.

10:58:19

THE COURT: Then, that's good enough.

MR. FLOOD: We can address the admissibility later, I guess.

THE COURT: Right. That's not -- that's not --

Byron.

10:58:31

What else? Anybody else have anything else?

MR. FLOOD: That's all I have, your Honor.

MR. COGDELL: You put me on hold.

THE COURT: Which one?

10:58:47 MR. COGDELL: On the --

MR. CHU: Sealed ex parte matter.

MR. COGDELL: -- sealed ex parte. You wanted to come back to that.

THE COURT: Yeah. Yeah. Probably not today.

10:58:55 MR. COGDELL: True.

THE COURT: Okay.

MR. COGDELL: I'm at your convenience, Judge.

THE COURT: Okay.

Oh, thank you, Byron.

10:59:06 MR. COGDELL: I'm around the rest of the year. I'm around before your procedure. Whatever is convenient for you.

THE COURT: Okay. So, I didn't see some new stuff that just got filed. Who filed -- that's the motion in limine by Eddie Austin. We just addressed that.

10:59:31 I think we got everything else. Yeah, I just wanted to make sure. There were a couple of new motions that I didn't see.

MR. DAVIDSON: Judge, on the 404(b), if I may --

THE COURT: Yeah.

10:59:41 MR. DAVIDSON: -- just to make you aware while you're

reviewing this. One of the issues that Mr. Sieck has and the objection we filed is -- for instance, with Sunrise Solar, which is the company Mr. Reed indicated that Eddie Austin, his client, and Ms. Austin -- they're alleged to have been involved in that.

10:59:58 THE COURT: Uh-huh, uh-huh.

MR. DAVIDSON: The notice is as to all Defendants. It simply says something to the effect "The other Defendants were involved" or "The Government will show they were involved." We have absolutely no factual basis for us to be able to --

11:00:14 THE COURT: Do you mean --

MR. DAVIDSON: Not as -- not as to -- Sunrise Solar as an example.

THE COURT: Oh, oh, oh. Okay.

MR. DAVIDSON: Just using that company as an

11:00:23 example --

THE COURT: Okay.

MR. DAVIDSON: -- they just throw in a single sentence that just says the Government will show that other Defendants were involved. And I think that's the phraseology they use.

11:00:31 But we get nothing in the way of actual what is it they're supposed to have done relative to that company that would qualify for 404(b).

THE COURT: And so, that was specifically with respect to Sunrise or just some other company?

11:00:43 MR. DAVIDSON: That was specifically with respect to

11:00:57
11:01:15
11:01:32
11:01:40
11:01:49

Sunrise, and I think it's also set out as to the other seven that are part of the notice. There are eight of them in all, Sunrise Solar being one. There's an additional seven.

But there's just all -- the complaint is -- that there's just no facts that are set out that would qualify for any of these Defendants, other than possibly Mr. Austin or Ms. Austin, because it does set out a little bit of information; but as to the remaining co-Defendants, there is nothing set out that would give us an ability to conduct a 404(b) assessment of whether this qualifies -- we meet the 404(b) criteria versus the 403.

MR. REED: And on companies other than Sunrise Solar; we have the same concern, on the other seven companies in the 404(b) not charged among the 12 in the indictment.

MR. DAVIDSON: Does that make sense, Judge? I'm not sure if I'm saying it very --

THE COURT: Like, you want to know what their whole case is?

MR. DAVIDSON: No, I don't want to know their whole case.

MR. COGDELL: Yes, yes, yes, we do.

THE COURT: I'm listening and I'm hearing what you're saying. And what I'm hearing is "We want to know every single thing they're going to say against us."

MR. COGDELL: Yes, we do.

MR. DAVIDSON: Judge, sure, I'd love -- I'd love that. But I just need to have enough to know whether it even qualifies for 404(b) other than their assertion that it will show he was, quote, involved.

11:02:00 THE COURT: Okay. So, what's your motion?

MR. DAVIDSON: The objection is that it doesn't satisfy 404(b) because they haven't set out facts that would put it within the criteria of 404(b).

THE COURT: Specific facts with respect to your client?

11:02:15

MR. DAVIDSON: Yes, ma'am -- oh, sorry, not "ma'am."

THE COURT: I've given up.

Should I shoot one of them or shoot myself?

MR. REED: Shoot me. Shoot me. Judge, just make it a clean shot, that's all.

11:02:43

MR. COGDELL: I love that. Do you promise me you'll do that in trial?

THE COURT: Shoot myself, that's what I'm going to do.

Okay. All right. I'll take a look at it. Let me look at it. I've got Mr. Reed's notice and motion and -- on that issue, and I'll take a look at it.

11:02:57

What else? What else? What else?

MR. MARTIN: And Judge, we were planning on filing a response to all of the --

11:03:10 THE COURT: I know. It's a bunch of late stuff that I

haven't even had a chance to even look at because it all just got filed, like, Thursday or Friday of last week or some of it, I guess, Saturday maybe or yesterday. So, I haven't even seen everything.

11:03:23 So, if I need to see you guys again, I'll let you know.

MR. COGDELL: Judge, can I ask a protocol question?

THE COURT: Sure.

MR. COGDELL: You've led a blessed life and have not

11:03:30 had me in front of you for probably a decade in trial.

THE COURT: At least.

MR. COGDELL: Good for you. It is my memory that you allow lawyers some voir dire. Am I remembering that correctly?

THE COURT: You're remembering that wrong.

11:03:43 MR. COGDELL: Okay. Well, you did back in the day, if I remember right.

THE COURT: I know. That was a long time -- 25 years ago.

MR. COGDELL: Been awhile.

11:03:54 THE COURT: I haven't been. I don't know. What do you-all think? Do you think I should let you-all do this voir dire?

MR. COGDELL: I would love to have a brief period of time, 30 minutes or so --

11:04:04 MR. FLOOD: Me, too.

MR. COGDELL: -- that we could carve up.

MR. DAVIDSON: You got her up against the wall.

THE COURT: I know. It's almost like I snorted through my nose.

11:04:11 MR. COGDELL: 20 minutes. Let's do 20.

THE COURT: One, two, three --

MR. COGDELL: No, no, no.

MR. FLOOD: No, no, no. To split up.

MR. COGDELL: I was talking about 30 collectively.

11:04:18 MR. FLOOD: To split up. Maybe ten minutes each or something.

THE COURT: Okay.

MR. COGDELL: I'm not that ambitious.

MR. FLOOD: As far as that's concerned, I think if we 11:04:25 are pushing it passed the procedure, that voir dire I think is due Friday. If we can get a little bit of an extension on that.

THE COURT: Sure. Filed by the first of January.

MR. FLOOD: Okay.

MR. REED: To push it even further, your Honor, how 11:04:37 would the Court feel about a -- if we could come up with a jury questionnaire that could be filled out by the panel in a short period of time?

THE COURT: No. Because you know why? Guess what happens? The questionnaires are always exactly what's already 11:04:49 on the original questionnaire just rearranged.

MR. REED: Oh, Judge, I --

THE COURT: I've never seen a jury questionnaire that didn't ask the exact same questions that are on the regular questionnaires but just rearranged in a different order except in death penalty cases or something like that. Other than that, it's like "Why are we doing this?" It's just like they just rearranged the stuff all around.

MR. REED: I bet I can come up with one, Judge.

MR. DAVIDSON: Well, Judge, with all due respect, it just seems like it will make it an easy decision on your part if Mr. Reed presents you with something that's, basically, a regurgitation of what you're going to talk about. So, give him a shot. Let's see if he can be creative.

THE COURT: If you-all -- only if you-all agree on it. It has to be agreed between the prosecution and the defense if there's a new questionnaire.

MR. REED: All right.

THE COURT: But I'm not that inclined to do it because every single one I've gotten, they've just been the exact same questions just rearranged in a different order.

MR. REED: I understand.

THE COURT: And I say what's the point of that? The people already answered the questionnaire and we're going to make them do it again but just do it in a different -- in a way that you guys like better than whatever the format is that we

have now. Usually, no.

MR. COGDELL: Do you want to set a -- "Do you want to?" Would it be wise to set a date before the trial date, your Honor, the Friday before, the Monday, perhaps, to see --

11:06:08 THE COURT: Not that Friday.

MR. COGDELL: Okay.

THE COURT: It's going to have to actually be earlier than that if we want to do that.

Byron, fix my computer so it doesn't time out so 11:06:18 fast. It's driving me crazy. I can't do this. It time outs, like, every five minutes. I can't do that. I can't do that. I can't have it timing out every five minutes.

THE CASE MANAGER: Okay.

MR. FLOOD: And then, send the guy over to my office.

11:06:25 THE COURT: How about the 4th? How about January the 4th?

MR. COGDELL: That's the Friday?

THE COURT: Uh-huh.

MR. COGDELL: That's fine by -- no, no, no, no. Just 11:06:37 for any followup.

THE COURT: Oh, no, no.

Byron, wait a minute. That isn't going to work. Byron, what about -- what about January the 7th? Byron, what do you think? Can I do that?

11:06:51 THE CASE MANAGER: You can do the 7th.

THE COURT: Let's do the 7th.

January the 7th for another pretrial conference on whatever other pending motions we have still outstanding or that I didn't get a chance to address today.

11:07:03 MR. MARTIN: Thank you, your Honor.

MR. COGDELL: That's fine by the defense.

THE COURT: That's one week out.

MR. COGDELL: Great. Thank you. What time, your Honor?

11:07:09 THE COURT: It will still be 9:30.

Let's see. Byron, is all the rest of this stuff going?

THE CASE MANAGER: Not yet. Not yet.

THE COURT: Byron, come here.

11:07:28 (Side-bar discussion off the record between the Court and the case manager.)

THE COURT: All right. Speak now or forever hold your peace. Anything else that is still outstanding that you-all haven't told me to still work on on terminating? Speak now.

11:08:03 Speak now or forever hold your peace.

MR. FLOOD: Good luck on your procedure.

THE COURT: Thank you.

MR. COGDELL: That will be after the 4th, correct?

THE COURT: The 8th, as a matter of fact. I'll be

11:08:14 good. I'll be good.

MR. COGDELL: Good.

THE COURT: I'll be ready for you guys by the 14th.

MR. COGDELL: Great.

MR. FLOOD: Yeah. But on the 7th, you're probably supposed to keep your blood pressure low, Judge.

THE COURT: We'll see. It will work out. It will work out.

MR. FLOOD: Good luck.

THE COURT: All right. Well, happy holidays --

MR. COGDELL: Happy holidays.

THE COURT -- to everybody. And thank you-all for working so hard.

And Mr. Cogdell, we'll probably call you back.

And you-all around, Mr. Chu, Mr. Martin, in case I'm looking for you?

MR. MARTIN: We will be around.

MR. CHU: Absolutely, your Honor.

MR. MARTIN: No doubt.

MR. COGDELL: I don't know if you would entertain that between Christmas and New Year's. I don't have any travel plans.

THE COURT: Oh, no, no, no. It will be before that, like, this week or next week.

MR. COGDELL: That's fine.

THE COURT: Yeah, yeah, yeah. On, no, no, no, not

that week. No, no, no. I got to hang out with my mama a little bit.

MR. COGDELL: Good for you. Thank you.

MR. CHU: Have a great holiday, Judge.

THE COURT: Okay. Take care, you-all.

(Proceedings concluded at 11:08 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter, to the best of my ability.

By: /s/*Gayle L. Dye* _______ *12-27-2018*

Gayle L. Dye, CSR, RDR, CRR Date